**James WHITT, Plaintiff,**

v.

**LOCKHEED MARTIN UTILITY SERVICES, INC., Defendant.**

**No. C2–99–1065.**

United States District Court,
S.D. Ohio,
Eastern Division.

April 15, 2002.

Tony C. Merry, Palmer, Volkema & Thomas, Columbus, OH, for Plaintiff.

Ronald Gordon Linville, William R. Post, Baker & Hostetler, Columbus, OH, for Defendant.

## MEMORANDUM & ORDER

HOLSCHUH, District Judge.

Plaintiff James Whitt brought suit against his former employer, Lockheed Martin Utility Services, Inc., alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Ohio Revised Code Chapter 4112, age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and Ohio Revised Code Chapter 4112, and wrongful discharge in violation of Ohio's public policy. This matter is currently before the Court on Defendant's motion for summary judgment. (Record at 22).

### I. Background

Lockheed Martin Utility Services Inc. ("Lockheed") employed Plaintiff James Whitt at its Piketon, Ohio facility from November 27, 1967 through July 31, 1997. (Ex. A to Pl.Dep., Ex. 1 to Def.'s Mot. Summ.J.). In his thirty years at Lockheed, Plaintiff held a variety of positions, including Draftsman, Material Control Analyst, and Drafting Technician III. (Id.). In September of 1995, Lockheed transferred Plaintiff to a Parts Specialist position in the Work Control Department, where he worked until his retirement in July 1997. (Pl.Dep. at 55). His supervisor was Dawn Hutchison.

The Work Control Department consisted of three groups—Maintenance Planners, Maintenance Schedulers, and Parts Specialists. The Planners scheduled maintenance work, developed estimates, and coordinated materials required to complete the projects. The Schedulers identified which individuals were needed to complete those projects, determined the sequence in which the tasks should be performed, and made arrangements for those tasks to be accomplished. Plaintiff and the other Parts Specialists ordered the necessary parts and supplies so that the Planners could focus on their planning responsibilities. (Hutchison Dep. at 21–22). However, the general consensus among the Maintenance Planners was that the Parts Specialists were more of a hindrance than a help. (Rogers Dep. at 21, Ex. 3 to Def.'s Mot.Summ.J.).

As time went on, Lockheed implemented a new computer program that allowed the Maintenance Planners to more easily order their own parts. (Ex. N to Pl.Dep., Ex. 1 to Def.'s Mot.Summ.J.). Because the Parts Specialists were no longer being fully utilized, the Work Control Department agreed to temporarily loan its four Parts Specialists to the Maintenance Department while the Maintenance Department's clerks were busy undergoing intensive computer training. In this capacity, the Parts Specialists, now referred to as "materials expediters," were responsible for ordering inventory and shop stock, like nuts and bolts, for the Maintenance Department's Front Line Managers. (Hutchison Dep. at 18, 22–23; Ex. N to Pl.Dep.).

In Spring of 1997, Lockheed determined that, because of declining work, it needed to implement a reduction-in-force. (Ex. 4 to Mem. Opp'n Mot.Summ.J.). To ensure that the impending layoffs would not have a disparate impact on any particular group of employees, Lockheed formed a disparate impact team and established a set of guidelines for managers to use in making their layoff decisions. (McGinnis Aff. ¶ 6, Ex. 2 to Def.'s Mot.Summ.J.; Ex. A to McGinnis Aff.).

In connection with this reduction-in-force, Jim Morgan, the Enrichment Plant Manager, advised Steve Casto, head of the Work Control Department, that Casto would have to eliminate six positions in the Work Control Department. (Casto Aff.

¶ 4, Ex. 6 to Def.'s Mot.Summ.J.). In response to this order, Mr. Casto conducted an evaluation of the entire Work Control organization to determine which positions were dispensable. (*Id.*). He considered multiple factors, including, but not limited to, each position's value to the organization, and whether a particular function's purposes were being fulfilled. (*Id.* at ¶ 5). He did not consider performance, age, gender, or retirement status in determining which positions to eliminate. (*Id.* at ¶ 7). Mr. Casto concluded that, because the Parts Specialists were no longer of significant value to the Work Control organization, all Parts Specialist positions could be eliminated. (*Id.* at ¶ 6).

Once preliminary lists of the employees selected for layoff were compiled, the disparate impact team reviewed the choices to ensure that the layoff decisions did not disparately impact minorities, women, or employees over forty. (McGinnis Aff. at ¶ 7). The disparate impact team applied the Equal Employment Opportunity Commission's ("EEOC's") selection criteria and determined that Lockheed's percentages fell well within the guidelines with respect to the protected classifications of age, gender, and race. (*Id.* at ¶ 8). On May 16, 1997, Lockheed advised Plaintiff and the other Parts Specialists that, as a result of the reduction-in-force, their positions were being eliminated and they would be laid off on July 31, 1997. (Ex. S to Pl.Dep., Ex. 1 to Def's Mot.Summ.J.). At that time, Plaintiff was 51 years old. (Pl.Dep. at 8).

Lockheed laid off one-hundred and forty-four employees between June 30, 1997 and August 31, 1997. (McGinnis Aff. ¶ 10). Prior to this reduction in force, 77.15% of Lockheed's workforce was male and 60.60% was over forty years of age. (*Id.*). One month following the reduction in force, 77.44% of Lockheed's employees were male and 60.80% were over forty years of age. (*Id.*). As of July 22, 1997, twenty-four salaried employees scheduled for layoff, including Plaintiff, had not found replacement positions at Lockheed. (*Id.* at ¶ 9). Of those twenty-four, fifteen were younger than Plaintiff, six were under forty years old, and eleven were female. (*Id.*).

At the time that the Work Control organization was forced to eliminate the Parts Specialist positions, the Maintenance Unit clerks had not yet completed their computer training on the new parts ordering system. (Hutchison Dep. at 41). Accordingly, when the Parts Specialists left, the Maintenance Department determined that it still needed someone to temporarily handle stock, inventory and supply ordering for its Front Line Managers. To fill this temporary need, the Maintenance Department borrowed Phyllis Ragland, who was forty-four years old, from the Purchasing Department. (Ragland Dep. at 15–16). Ms. Ragland moved to the shop floor of the 720 Building where Plaintiff had previously worked. (Hutchison Dep. at 35–36). For approximately four months, from August until December of 1997, Ms. Ragland ordered shop stock for the Front Line Managers, as Plaintiff and the other Parts Specialists had done prior to the layoff. (Ex. CC to Pl.Dep.). Once the Maintenance Unit clerks completed their training and resumed their shop stock ordering function in December of 1997, Ms. Ragland returned to work in the Purchasing Department. At that point, Julie Needham, who was younger than Phyllis Ragland, took over the work Ms. Ragland had been doing in the Maintenance Department. (Ragland Dep. at 18). Ms. Needham took on this responsibility in addition to the time entry work which she had previously been performing. (*Id.* at 20; Hutchison Dep. at 42).

Lockheed bases its retirement plan on accumulated years of service. (McGinnis

Aff. ¶ 11). In order to get full retirement benefits, an employee must earn a total of eighty-five points. Lockheed awards employees one point for each year of service and one point on their birthdays. (*Id.*). It also awarded employees who were laid-off as a result of the reduction-in-force two additional points toward retirement. (*Id.*). Prior to the layoff, Plaintiff had accumulated eighty points toward retirement. (Pl. Dep. at 119). After receiving the two additional layoff points, he still lacked three points to be eligible for full retirement. Plaintiff contacted Bill Reep, Lockheed's Employees Concern Manager, to see if Lockheed would award him the three extra points. (*Id.* at 120). Lockheed denied Plaintiff's request; it had already determined that employees would not be permitted to avoid or delay layoff solely to accumulate seniority points. (McLaughlin Dep. at 45–46). To make an exception, a department manager had to present a business justification and, in Plaintiff's case, none existed. (*Id.* at 46–47). Upon receiving his notice of layoff, Plaintiff applied for a few positions but then decided to take early retirement and stay at home to babysit his grandchildren. (Pl.Dep. at 177–178).

On January 13, 1998, Plaintiff filed a charge of discrimination with the EEOC alleging that, in selecting him for layoff, Lockheed had discriminated against him because of his age and gender. Plaintiff obtained a Right to Sue letter on July 19, 1999 and filed suit against Lockheed on October 14, 1999. In Count I of his complaint, Plaintiff alleges that Lockheed discriminated against him on the basis of his gender in violation of Title VII. In Count II of the complaint, he alleges that Lockheed discriminated against him on the basis of age, in violation of the Age Discrimination in Employment Act. In Count III, Plaintiff asserts parallel state law claims, alleging age and sex discrimination in violation of Ohio Revised Code Chapter 4112.

In Count IV, Plaintiff brings a common law wrongful discharge action. Defendant has now moved for summary judgment on all of these claims.

## II. Standard for Granting Summary Judgment

Federal Rule of Civil Procedure 56(c) provides:

> [Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original); *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner,* 570 F.2d 107, 111 (6th Cir.1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is ... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting*

*Sys.,* 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)); *accord County of Oakland v. City of Berkley,* 742 F.2d 289, 297 (6th Cir.1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for what was formerly referred to as a directed verdict. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

> The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted. *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745, n. 11, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (footnote omitted); *accord Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1455–56 (6th Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). Inferences to be drawn from the underlying facts contained in such materials must also be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n,* 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *Adickes,* 398 U.S. at 157–60, 90 S.Ct. 1598.

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

## III. Discussion

As noted earlier, Plaintiff has alleged that Lockheed discriminated against him

on the basis of his age and gender in violation of Title VII, the ADEA, and Ohio Revised Code Chapter 4112. He has also alleged wrongful discharge in violation of Ohio's public policy. Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The ADEA prohibits employers from discriminating "against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Ohio's anti-discrimination statute, set forth in Ohio Revised Code Chapter 4112, prohibits employment discrimination on the basis of "race, color, religion, sex, national origin, disability, age, or ancestry." Ohio Revised Code § 4112.02(A). It closely parallels the federal discrimination statutes and Ohio courts rely on cases interpreting Title VII and the ADEA for guidance. *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (Ohio 1981); *Bucher v. Sibcy Cline, Inc.*, 137 Ohio App.3d 230, 239, 738 N.E.2d 435, 442 (Ohio Ct.App. 2000). Furthermore, because Plaintiff's wrongful discharge claim is based on public policy as set forth in these discrimination statutes, its viability hinges on the viability of his statutory claims of discrimination. Thus, all of Plaintiff's federal and state law claims may be analyzed together.

An employee alleging age or gender discrimination can withstand a motion for summary judgment either by presenting direct evidence of discrimination or, using the *McDonnell Douglas* framework set forth below, by presenting circumstantial evidence from which a jury may infer a discriminatory motive underlying the adverse employment action. *See Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir.1997); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir.1998). Direct evidence "is that evidence which, if believed, requires the conclusion that the unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999). Plaintiff has presented no direct evidence that Lockheed singled him out for layoff either because he was male or because he was more than forty years old. In cases like this, where the plaintiff has only circumstantial evidence of a discriminatory motive, claims are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Under this framework, a plaintiff must first establish a prima facie case of discrimination. If the plaintiff is successful in doing so, an inference of discrimination arises and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 802–03, 93 S.Ct. 1817. If the employer articulates such a reason, the plaintiff must then prove by a preponderance of the evidence that the reason offered was pretextual. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the discharge; or (3) the proffered reason was insufficient to motivate the discharge. *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against him remains at all

times with the plaintiff. *See Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

Normally, in order to establish a prima facie case of gender discrimination, a plaintiff must establish the following: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by, or treated differently than, someone outside of the protected class. *See Laderach v. U–Haul of Northwestern Ohio*, 207 F.3d 825, 828 (6th Cir. 2000). And normally, in order to establish a prima facie case of age discrimination, a plaintiff must show that: (1) he was over the age of forty; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a substantially younger employee. *See Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir.1999). Lockheed concedes, for purposes of the pending motion, that the first three elements of each claim have been satisfied— Plaintiff is a member of a protected class, suffered an adverse employment action, and was qualified for his position. Plaintiff claims that the fourth element of each claim has also been satisfied because he was replaced, first by Phyllis Ragland, and later by Julie Needham, both younger, female employees.

Lockheed, however, argues that Plaintiff was not "replaced" as that term has been defined by the Sixth Circuit. Lockheed further contends that Plaintiff's position was eliminated as part of a reduction-in-force ("RIF"). If that is the case, it will be more difficult for Plaintiff to establish a prima facie case of discrimination. *See Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir.1986) (a plaintiff "terminated amidst a corporate reorganization carries a greater burden of supporting charges of discrimination"). As the Sixth Circuit has explained in numerous decisions, when a RIF occurs, mere termination of a competent employee is not enough to establish a prima facie case of discrimination. *See LaGrant v. Gulf & Western Mfg. Co., Inc.*, 748 F.2d 1087, 1090 (6th Cir.1984). In the context of a RIF, "the decision to discharge a qualified, older employee is not inherently suspicious. The decision is readily explainable in terms of the employer's economic situation." *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 896 (6th Cir.1997).[1]

Furthermore, when a RIF occurs, the employer is not likely to replace the plaintiff with a single worker. For these reasons, in the context of a RIF, the fourth element of the prima facie case of discrimination must be modified; instead of showing that he was replaced by someone outside of the protected class, a plaintiff must offer some "direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir.), *cert. denied*, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990). *See also Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 420 (6th Cir. 1999); *Godfredson*, 173 F.3d at 371; *Ercegovich*, 154 F.3d at 350; *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126

---

1. "The ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations, downsizing, plant closings and relocations." *Allen v. Diebold, Inc.*, 33 F.3d 674, 677 (6th Cir.1994). Furthermore, "[t]he ADEA only bars discrimination on account of age; it does not place on employers an affirmative obligation to retain older workers whenever a reduction in staff becomes necessary." *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir.1991). Employers are entitled to eliminate even those positions held by older employees, so long as the employers do not act with discriminatory intent. *Id.*

(6th Cir.1998); *Burns v. Jacor Broadcasting Corp.*, 128 F.Supp.2d 497, 511–12 (S.D.Ohio 2001).

In *Barnes*, the Sixth Circuit provided guidance for distinguishing situations where an employee has been "replaced" from those in which the employee's position has been eliminated as part of a true RIF:

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. *However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.* A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

896 F.2d at 1465 (emphasis added).

Plaintiff does not dispute that business considerations forced Lockheed to eliminate numerous positions within the company. However, he claims that his particular position was never really eliminated; he contends that Lockheed replaced him with Phyllis Ragland and later with Julie Needham. Lockheed disagrees. Since the fourth element of a prima facie case differs depending on whether Plaintiff was "replaced" or whether his position was eliminated as part of a RIF, the Court must first look at this threshold issue. If Plaintiff was indeed "replaced," as that term has been interpreted by the Sixth Circuit in *Barnes*, then it appears that he has established the four traditional elements of a prima facie case of employment discrimination, giving rise to a presumption of discriminatory animus. However, if his position was truly eliminated as part of the RIF, in order to defeat the motion for summary judgment, Plaintiff must present additional evidence tending to indicate that he was singled out for layoff for impermissible reasons.

**A. Was Plaintiff "Replaced" by a Younger, Female Employee?**

█ Plaintiff claims that his position was never eliminated. He claims that after he was laid off, he was replaced by Phyllis Ragland and that, four months later, when Ms. Ragland returned to the Purchasing Department, she was replaced by Julie Needham. It is undisputed that both Ms. Ragland and Ms. Needham are female and both are younger than Plaintiff. The only relevant question is whether either of them "replaced" him. As the Sixth Circuit held in *Barnes*, an employee is not "replaced" when: (1) "another employee is assigned to perform the plaintiff's duties in addition to other duties;" or (2) "when the work is redistributed among other existing employees already performing related work." 896 F.2d at 1465.

Both Ms. Ragland and Ms. Hutchison testified in their depositions that when Julie Needham began ordering shop stock for the Front Line Managers in December of 1997, she did this in addition to her other time entry duties. (Ragland Dep. at 20; Hutchison Dep. at 42). Since Plaintiff has presented no evidence to the contrary, he has failed to create a genuine issue of material fact concerning whether Ms. Needham "replaced" him, as that term has been construed by the Sixth Circuit. The Court finds that because Ms. Needham was assigned to perform Plaintiff's duties in addition to her other duties, she did not "replace" Plaintiff.

The question of whether Ms. Ragland "replaced" Plaintiff is a bit more problematic. It is undisputed that during the time Ms. Ragland was assigned to the Maintenance Department, her sole respon-

sibility was to order shop stock for the Front Line Managers. (Pl.Dep.Ex.CC). In order to determine whether Ms. Ragland "replaced" Plaintiff, the Court must first determine what Plaintiff's duties were on the date he was laid off. The evidence concerning this issue appears to be in conflict. Plaintiff testified in his deposition that, up until the day he retired, his job duties included ordering shop stock for the Front Line Managers *and* ordering parts for the Maintenance Planners in the Work Control Department. (Pl.Dep. at 60, 66–67, 72–73). However, Dawn Hutchison testified at her deposition that, once Plaintiff moved to the shop floor, he was no longer responsible for ordering parts for the Maintenance Planners; his sole responsibility was ordering shop stock for the Front Line Managers. (Hutchison Dep. at 24–25).

In the Court's view, even though this evidence appears to be in conflict, it does not create a genuine issue of material fact concerning whether Plaintiff was "replaced" by Ms. Ragland. If Plaintiff's own testimony is to be believed—that, at the time he was laid off, he was responsible both for ordering parts for the Maintenance Planners *and* for ordering shop stock for the Front Line Managers, then Ms. Ragland could not be found to have "replaced" him because she did not assume all of his duties. Although Ms. Ragland did order shop stock for the Front Line Managers, it is undisputed that she never ordered parts for the Maintenance Planners.

On the other hand, if Ms. Hutchison's testimony is correct—that Plaintiff's sole responsibility at the time he was laid off was to order shop stock for the Front Line Managers—Ms. Ragland still cannot be said to have "replaced" him. Ms. Ragland testified that she assumed responsibility for tasks previously performed not only by Plaintiff, but by all three Parts Specialists

whose positions were eliminated as part of the RIF. (Ragland Dep. at 18). Again, Plaintiff has presented no evidence to the contrary. Since Ms. Ragland was performing Plaintiff's duties in addition to duties previously held by three other employees, she cannot be said to have "replaced" him as that term has been construed by the Sixth Circuit.

The Court also finds it significant that Ms. Ragland was never employed by the Work Control Department. Although the Work Control Department had temporarily loaned Plaintiff and the other Parts Specialists to the Maintenance Department, the Parts Specialists continued to be paid out of the Work Control Department's budget. Ms. Ragland, on the other hand, was loaned to the Maintenance Department by the Purchasing Department and the Purchasing Department continued to pay her compensation. (Casto Aff. ¶ 8). Since Ms. Ragland was never part of the Work Control Department, this further weakens Plaintiff's argument that she "replaced" him.

In summary, Plaintiff has failed to present sufficient evidence from which a reasonable jury could find that either Phyllis Ragland or Julie Needham "replaced" him, as that term has been construed by the Sixth Circuit. The Court therefore finds that Plaintiff's layoff was part of a true RIF. The Court must, therefore, modify the fourth element of the prima facie case and determine whether Plaintiff has presented direct, statistical, or circumstantial evidence that tends to indicate that he was singled out for termination for impermissible reasons. *See Barnes,* 896 F.2d at 1465.

### B. Has Plaintiff Submitted Other Evidence Tending to Indicate that He Was Singled Out for Layoff for Impermissible Reasons?

Since Plaintiff's position was eliminated as part of a true RIF, he bears a heavier

burden of proving that Lockheed discriminated against him on the basis of his age and/or gender. He must present direct, statistical, or circumstantial evidence that tends to indicate that he was singled out for layoff because he was male and/or because he was more than forty years old. Because Plaintiff took the position that he was "replaced" by Ms. Ragland and Ms. Needham, his memorandum in opposition to the motion for summary judgment did not address this modified element of the prima facie case. The Court has, however, attempted to search the record to determine if Plaintiff has other evidence tending to indicate that he was singled out for layoff for impermissible reasons.

As previously stated, Plaintiff has not presented any direct evidence of discrimination.[2] He has also failed to present any statistical evidence to support his claim. In fact, the only statistical evidence in the record was submitted by Lockheed and it cuts against Plaintiff's claim that he was singled out for termination because of his age or gender. Prior to the RIF, 77.15% of Lockheed's workforce was male and 60.60% was over forty years of age. After the RIF, 77.44% of employees were male and 60.80% were over forty years of age. (McGinnis Aff. ¶ 10). Thus, the percentage of males and percentage of people over forty working for Lockheed actually increased after the layoffs.

In terms of circumstantial evidence of unlawful discrimination, the Court finds that Plaintiff has asserted two basic arguments. First, Plaintiff contends that Lockheed selected him for layoff because it wanted to avoid paying him his full retirement. (Pl.Dep. at 96, 126). In support of this argument, he points to the existence of a disparate impact analysis chart created by Lockheed, showing demographic information about each employee selected for layoff. This chart includes information about each employee's pension eligibility. (Ex. 7 to Pl.'s Mem. Opp'n Mot.Summ.J.). Plaintiff contends that the fact that pension status information is included on the chart is evidence that Lockheed sought to layoff those older employees who were approaching retirement age.

However, Steve Casto has specifically testified that, in determining which positions in the Work Control Department should be eliminated, he did not consider either the age or pension eligibility of his employees. (Casto Aff. ¶ 7). Furthermore, Casto's decision was, of necessity, made before this list was even compiled. Benjamin McLaughlin, Lockheed's administrative support manager, testified that information on age, race, and gender was compiled so that the disparate impact team could determine whether the impending layoffs would adversely affect any particular group of employees. He further testified that he did not know why information about performance ratings, pay groups, or pension eligibility was included on the chart; he speculated that perhaps the benefits department compiled some of that data to facilitate the processing of people off the payroll. (McLaughlin Dep. at 37). Anita McGinnis, Lockheed's staffing manager, noted that eleven of forty-eight salaried employees whom Lockheed selected for layoff already had fully vested pensions. (McGinnis Aff. ¶ 14).

Without any showing that pension eligibility was even considered in selecting which positions would be eliminated, the mere existence of a column labeled "pension status" on the disparate impact analysis chart does not suffice to create a genuine issue of material fact concerning whether Lockheed intentionally discriminated against Plaintiff on the basis of his

---

2. Although Plaintiff claims to have direct evidence of discrimination, he has failed to present any to the Court. (Pl.'s Mem. Opp'n to Mot.Summ.J. at 5).

age. Furthermore, even if Lockheed had considered pension eligibility in selecting employees for layoff, this would not necessarily "constitute discriminatory treatment on the basis of age." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 612, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). Because "an employee's age is analytically distinct from his years of service," a claim that an employer selected an employee for termination to save money on pension benefits does not necessarily support an age discrimination claim. *Id.* at 611, 113 S.Ct. 1701.[3]

Plaintiff also appears to contend that the existence of an affirmative action program at Lockheed, designed to enhance employment opportunities for women, constitutes evidence from which a jury could infer that he was singled out for layoff because he was male. However, the mere existence of the affirmative action plan is insufficient to prove intentional discrimination. *See Sampson v. Secretary of Transportation,* No. 98–5669, 1999 WL 455399 at *2 (6th Cir. June 23, 1999) (*citing Whalen v. Rubin,* 91 F.3d 1041, 1045 (7th Cir. 1996)). Plaintiff must also establish a connection between the existence of the affirmative action plan and the fact that he was selected for layoff.

Plaintiff attempted to do this at Mr. McLaughlin's deposition. In that deposition, Mr. McLaughlin was presented with a hypothetical situation in which Lockheed would be forced to lay off either a man or a woman who were equally qualified for a job and hired on the same day. When asked whether the affirmative action plan would influence the decision, McLaughlin responded, "I can't say whether it would or not. It could." He then went on to explain that if the disparate impact analysis had shown that the selection process

had an adverse impact on women, the selections may have been reconsidered. However, in this case, that was not necessary because there was no indication that a disproportionate number of women had been selected for layoff. (McLaughlin Dep. at 25–26).

In the Court's view, Mr. McLaughlin's response to the hypothetical question posed to him at his deposition is insufficient to create an inference that Plaintiff was selected for layoff because he was male. This is particularly true in light of Mr. Casto's affidavit which states that Casto did not consider gender in determining which positions in the Work Control Department should be eliminated. (Casto Aff. ¶ 7). According to Mr. Casto, he determined that all Parts Specialist positions could be eliminated because they no longer served a useful function and were of little value to his department; gender was not a factor. Plaintiff has simply failed to present any evidence from which a jury could infer that the existence of the affirmative action plan had any impact at all on the layoff decisions made by Mr. Casto.

The Court finds that Plaintiff has failed to produce direct, circumstantial, or statistical evidence that tends to indicate that he was singled out for layoff for impermissible reasons. All Parts Specialist positions were eliminated as part of the RIF and there is no evidence that the age or the gender of any of the Parts Specialists played any part in that decision. The Court therefore finds that, because Plaintiff has failed to establish a prima facie case of either age or sex discrimination, Defendant is entitled to summary judgment on all claims.

---

**3.** It is unlawful for an employer to fire an employee in order to prevent his pension benefits from vesting. *See* 29 U.S.C. § 1140.

However, this is a completely different claim and one that has not been asserted by Plaintiff in his complaint.

■ However, even if Plaintiff had established a prima facie case of age or sex discrimination, Lockheed has satisfied its burden of articulating a legitimate, non-discriminatory reason for selecting Plaintiff for layoff. For economic reasons, Lockheed was required to implement a reduction-in-force in which over one hundred employees were laid off. As part of that reduction-in-force, Steve Casto was instructed to eliminate six positions from the Work Control Department. He determined that the Parts Specialist position was no longer serving its intended function and could, therefore, be eliminated.

Since Lockheed has articulated a legitimate, non-discriminatory reason for selecting Plaintiff for layoff, the burden would then shift back to Plaintiff to show that this reason is a pretext for discrimination. As previously stated, the Plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the discharge; or (3) the proffered reason was insufficient to motivate the discharge. *Manzer*, 29 F.3d at 1084. Plaintiff has failed to do so.

During his deposition, Plaintiff conceded that he had no reason to believe that Lockheed's stated reason for the RIF was false. (Pl.Dep. at 117). Furthermore, as noted earlier, the statistical evidence in this case does not support a finding that Lockheed's stated reason for eliminating the Parts Specialist positions was a pretext for discrimination. The percentage of men and people over forty working for Lockheed actually increased after the RIF. Plaintiff claims that the existence of Lockheed's affirmative action program and the existence of the "pension status" column on the disparate impact chart are evidence of pretext. However, as noted earlier, absent any showing that either of these

played even a small part in the decision to eliminate the Parts Specialist positions, this "evidence" of pretext is not persuasive and is insufficient to defeat summary judgment.[4]

## IV. Conclusion

Plaintiff has failed to present sufficient evidence to create a genuine issue of material fact concerning whether Phyllis Ragland or Julie Needham "replaced" him after he was laid off. He has also failed to present other direct, statistical, or circumstantial evidence tending to indicate that he was singled out for layoff because of his age or gender. Based on the evidence presented, no reasonable trier of fact could conclude that Lockheed's decision to eliminate Plaintiff's position as part of its reduction-in-force was in any way motivated by a discriminatory animus. Even if Plaintiff had established a prima facie case of age or sex discrimination, he has failed to present sufficient evidence from which a jury could find that the reason given by Lockheed for selecting him for layoff was pretextual. For these reasons, Defendant's motion for summary judgment (Record at 22) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

---

4. Because the Court finds that summary judgment is warranted, it need not address Defendant's arguments concerning Plaintiff's failure to mitigate damages.