**Ival S. WILSON, Plaintiff–Appellant,**

**v.**

**FIRESTONE TIRE & RUBBER CO., Defendant–Appellee.**

No. 89–3801.

United States Court of Appeals, Sixth Circuit.

Argued June 12, 1990.

Decided May 6, 1991.

William R. Holland (argued), Akron, Ohio, for plaintiff-appellant cross-appellee.

Keith L. Pryatel, John E. Holcomb (argued), Millisor & Nobil, Cleveland, Ohio, for defendant-appellee cross-appellant.

Before KEITH and JONES, Circuit Judges, and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

In this case, an older salaried worker raises claims that his employer, which was forced by economic factors to eliminate jobs and streamline operations, improperly elected to retain younger middle management personnel over older workers. The plaintiff-appellant, Ival S. Wilson, brought suit against his former employer, the Firestone Tire & Rubber Company ("Firestone"), alleging breach of contract and age discrimination. The district court granted summary judgment for Firestone on Wilson's pendent state law breach of contract claim, and following a jury trial, granted Firestone's motion for a directed verdict on the state and federal age discrimination claims. For the reasons that follow, we affirm.

Wilson was a salaried employee of Firestone in Akron, Ohio for almost thirty-four years from 1953 until 1987. He joined the company in an accounting position, and later served as Manager of Chemical Purchasing. In February 1982, Wilson accepted the position of Manager of Rubber Purchasing. At that time, Wilson was 47 years old.

Firestone's tire production business slumped in the early 1980s. The purchasing department trimmed its work force from 70 down to 42 employees as Firestone's rubber purchases decreased from 12,000 metric tons in 1976 to 7,000 metric tons by 1987.

In the fall of 1986, Firestone informed salaried employees, including Wilson, about their eligibility for a company-wide voluntary early retirement program under which Firestone would add four years to any eligible employee's age and years of service for pension calculation purposes. Wilson testified at trial that his immediate superior, Robert Klein, expressed the hope that some of the older workers in the purchasing department would take advantage of the early retirement incentive program so that younger persons in the department would not have to lose their jobs. While Klein contends that he instead expressed concern that the incentive program would lead to a loss of older experienced workers in the department, Firestone accepts Wilson's version as true.

In December 1986, Gary Crigger, Firestone's Corporate Vice–President of Purchasing, approached Klein about the possibility of reorganizing the purchasing department and eliminating the Manager of Rubber Purchasing position then held by Wilson. Wilson was 51 years old at the time. Klein agreed with Crigger that the purchasing department needed to be streamlined and that Wilson's position could be eliminated.

Crigger contacted Robert Mowery, a Firestone personnel official, who developed a plan for the staff cutbacks in the purchasing department. Mowery sought and received approval of the plan from Firestone's reduction-in-force (RIF) committee, which was composed of various company attorneys and personnel officials. The RIF committee functioned to ensure that company reorganizations and layoffs were handled properly and in accordance with Firestone internal policies.

On March 10, 1987, Klein met with Wilson to inform him of the staff cutbacks in the purchasing department. Klein stated that the major reorganization of the department, and the elimination of Wilson's position, were necessitated by economic factors, and had nothing to do with Wil-

son's job performance. Klein told Wilson that several options existed for him once the Manager of Rubber Purchasing position was eliminated. These included: (1) bumping down and displacing any of the three persons Wilson directly and immediately supervised; (2) accepting an open chemical buyer's position recently vacated by a retiring employee within the purchasing department; (3) applying for subsequent open positions at Firestone for a period of up to two years; or (4) opting to retire from Firestone and accept a severance package which included pension benefits, lifetime health care and two weeks of pay for each of his 33 years of service with the company. Wilson stated at trial that he was not told about possible salary reductions were he to accept any of the first three options.

Firestone asked Wilson to reach a decision by March 16, 1987. Wilson contacted a friend in the development department to obtain a salary schedule for the positions offered to him by Firestone. Based on this conversation, Wilson concluded that his salary reduction in any of the new positions would have totaled $960 per month. Klein had given Wilson papers indicating that the salary reduction would only have amounted to $130 per month, but Wilson testified that he neglected to read this information. He never spoke to Klein, Mowery or Crigger about what his salary level would be were he to accept any of the first three options. On March 16, 1987, Wilson informed Klein that he had selected the fourth option—early retirement—and Wilson left Firestone effective April 30, 1987. He testified at trial that even had he known that his salary would decrease only $130 per week were he to stay with Firestone, he probably still would have selected the early retirement option.

Pursuant to the severance agreement, Wilson continued to receive his full salary of $4,490 per month through August 1988, for a total of $69,779.68. Wilson also received pension payments of $1,125 per month, as well as health insurance coverage. On August 1, 1987, Wilson obtained employment with a commodities broker, Cargill, as a rubber marketer. Between that date and the July 1989 trial of his age discrimination claims, Wilson earned $66,184 in salary payments at Cargill. The severance payments, pension payments and Cargill salary received by Wilson totaled $181,286 at the time of trial. Had he been able to remain at Firestone at his old position and salary level, Wilson would have received $121,000 in salary payments for this same time period. Also Wilson concedes that he suffered no losses in pension benefits by retiring early rather than remaining with Firestone until age 65, and he also began to accrue pension rights with Cargill after joining that company in 1987.

After Wilson's departure from Firestone, his former duties as Manager of Rubber Purchasing were divided among two other persons, then 38 and 40 years old, who also carried on other responsibilities in the company.

## I.

Wilson brought suit under the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. sections 621–34. He also brought a pendent claim for breach of contract under Ohio law based on the theory of promissory estoppel. An additional pendent claim arising under an Ohio age discrimination statute similar to the ADEA, Ohio Rev.Code section 4112.02(A), was dismissed by the district court and is not part of the appeal to this court.

■ Since the case was tried before a jury and decided by directed verdict, we need only consider whether Wilson presented sufficient evidence, which, when viewed in a light most favorable to him, might have led reasonable minds to conclude that Firestone's actions were motivated by age discrimination. The district court's conclusion that Wilson failed to present a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is not reviewed since the matter proceeded to trial. *See Brownlow v. Edgecomb Metals Co.,* 867 F.2d 960 (6th Cir.1989) ("[I]t is now firmly established in this circuit that when a case has been tried on the merits, a

reviewing court need not address the sufficiency of plaintiff's prima facie case, and may instead proceed directly to the ultimate question whether plaintiff has established discrimination").

■ A plaintiff who brings a claim under the ADEA must prove that age was a determining factor in the adverse action that the employer took against him. *Brownlow v. Edgecomb Metals Co.*, 867 F.2d at 963; *Laugesen v. Anaconda Co.*, 510 F.2d 307, 317 (6th Cir.1975). Once the employer articulates a legitimate, non-discriminatory business reason for its action, any presumption of discrimination drops from the case, and the burden of persuasion rests squarely on the plaintiff. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). Wilson could have carried this burden "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*

■ Wilson failed to produce such direct or indirect evidence at trial. He alleged that a reference to "33 years of service" in a memo written by Crigger at the time Firestone was developing the severance package for Wilson was an indication that age played a part in the decision to eliminate his position. However, Firestone severance pay was computed with reference to an employee's years of service, and there is no indication in the memo that the length of service or Wilson's age affected the decision to reorganize the purchasing department.

■ Wilson also pointed to his 1986 conversation with Klein, in which the latter allegedly expressed his hope that older workers would take advantage of Firestone's early retirement incentive program so that younger workers would not be displaced. Wilson does not suggest that the comment was directed specifically at him, or that Klein ever encouraged him to take early retirement. A company's decision to offer such incentive programs does not indicate a policy of age discrimination, since the programs offer older workers benefits not available to younger employees. *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 71 (6th Cir.1982). Absent testimony that Klein took active steps to push Wilson toward retirement based on an improper discriminatory motive, no factual issue can be gleaned from Wilson's statement which might have led a reasonable jury to find in his favor on the ADEA claim.

■ Finally, Wilson argued at trial that various Firestone personnel documents which noted his and all other employees' birthdates and years of service indicated that age played a substantial part in the reorganization plans for the purchasing department. However, the mere maintenance of such information, absent direct evidence that it was used in making adverse employment decisions, cannot create even a circumstantial inference of discrimination. As Firestone notes, Equal Employment Opportunity Commission regulations required the company to keep such records. *See* 29 C.F.R. § 1627.3 (1990).

Wilson has thus failed to present sufficient evidence that his age was a significant motivating factor in Firestone's decision to eliminate his position.

■ Wilson, citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), contends that Firestone had the burden of production to show that the elimination of his position with the company would have occurred regardless of the alleged age discrimination. We disagree. Under *Price Waterhouse*, such a burden on the defendant only arises where the plaintiff presents direct evidence that unlawful discriminatory animus was a substantial motivation for the adverse action. *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 315–16 (6th Cir.1989). As discussed above, Wilson failed to present sufficient evidence that his age was a significant motivating factor in Firestone's decision to eliminate his position, and we decline to apply *Price Waterhouse* to these facts.

In addition to Wilson's failure to present sufficient evidence for a reasonable jury to conclude that Firestone's actions were motivated by age discrimination, Wilson offered no evidence which might have led a jury to conclude that he was actually or constructively discharged, or that he suffered any damages. The presentation to him of other legitimate options for continued employment with the company, even in less prestigious positions, precludes a finding that he was constructively discharged. A demotion within a company does not amount to a constructive discharge unless the proffered employment options would have been "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign". *Yates v. Avco Corp.,* 819 F.2d 630, 636–37 (6th Cir.1987); *Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir. 1982).

No one at Firestone forced or encouraged Wilson to select the early retirement option, and there is no indication that Firestone intended to make his working conditions unpleasant had he stayed. When Wilson asked Klein about the decision, Klein simply said it was a personal choice which depended on Wilson's particular financial and family situation. There was nothing in the conversation which might reasonably have given Wilson the perception that he was being forced to resign. Though Wilson continued to work at Firestone for six weeks after announcing his decision to accept early retirement, he never expressed regret about his choice during that period, and he did not dispute at trial that he could have chosen to replace any of the three persons he supervised or could have taken the open position as a chemical buyer.

Also, Wilson's perception that the three options for continued employment with Firestone involved a great loss of prestige for him was unreasonable. The entire company was undergoing severe financial stress, and the purchasing department in particular was being streamlined. Wilson could have elected to remain with the company without suffering professional embarrassment. When an employee alleges that he was forced to resign, the employee's perception must be judged objectively without consideration of his undue sensitivities. *Henry v. Lennox Indus. Inc.,* 768 F.2d 746, 752 n. 3 (6th Cir.1985). The employee has "an obligation not to assume the worst, and not to jump to conclusions too fast." *Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir. 1987).

We therefore agree with the district court that Firestone was entitled to a directed verdict on Wilson's ADEA claim because Wilson failed to present sufficient evidence, even when viewed in his favor, which would discredit or outweigh Firestone's legitimate, nondiscriminatory reasons for its actions. The record is devoid of any evidence that the restructuring of Wilson's department or the elimination of his position was in any way motivated by age discrimination. "This is not a case where the plaintiff presented evidence that management favored younger workers, tended to fire older workers, or indicated in some manner that older workers were held in disfavor." *LaGrant v. Gulf & Western Mfg. Co.,* 748 F.2d 1087, 1091 (6th Cir. 1984). *See also Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 (6th Cir.1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination"). The three persons whom he could have elected to displace ranged in age from 32 to 57. Wilson at the time was 52 years old. He was offered four reasonable options; he elected to accept a lucrative early retirement package. The options were the product of reasonable business decisions by Firestone, and the selection of the fourth option was made freely and thoughtfully by Wilson. We affirm the directed verdict in favor of Firestone on the ADEA claim.

In light of our disposition of the age discrimination claim, we need not address the district court's preliminary decision to offset any alleged damages under the ADEA with the pension and severance benefits Wilson received from Firestone and the interim earnings he received from Cargill. In addition, we need not consider the district court's decision that Wilson would

not have been entitled to front pay had he proven his ADEA claim. We see no abuse of discretion in either of the district court's rulings, but need not delve into the matter further since we hold that Wilson failed to present evidence of an ADEA violation.

## II.

Wilson also alleges that the district court erred in granting Firestone's motion for summary judgment on his pendent claim for breach of contract under Ohio law. Yet in his notice of appeal, Wilson failed to raise the dismissal of those claims as matters for appeal. He referred to his age discrimination claims, and to the district court's directed verdict rulings, but made no mention of the summary judgment on the Ohio breach of contract claim. The directed verdict was entered on July 28, 1989, while the summary judgment on the pendent contract claim was entered on July 11, 1989. Wilson failed to refer to the latter date, or any actions taken on that date, in his notice of appeal.

We conclude that Wilson has failed to preserve any contract/promissory estoppel claim for appeal. "If an appellant ... chooses to designate specific determinations in his notice of appeal—rather than simply appealing from the entire judgment—only the specified issues may be raised on appeal." *McLaurin v. Fischer*, 768 F.2d 98, 102 (6th Cir.1985) (citing *Drayton v. Jiffee Chemical Corp.*, 591 F.2d 352, 361 n. 10 (6th Cir.1978)); *See also Bach v. Coughlin*, 508 F.2d 303, 307 (7th Cir.1974) ("Where, however, as in this case, a party intentionally does not appeal a part of judgment, he cannot, after the time for filing has elapsed, change his mind and appeal from that part of the judgment").

Even had Wilson properly appealed the breach of contract claims, we are satisfied that the district court was correct in granting summary judgment for Firestone. Under the employee handbook in effect in 1987, which Wilson admitted on deposition he had read, Wilson was an "at will" employee. He has not presented any contrary written or oral contractual arrangements which modified this provision,

and does not indicate detrimental reliance on any promises or statements of Firestone officials. Under Ohio law, the employment-at-will doctrine allows either party to an employment relationship to terminate it for any reason not contrary to law. *Phung v. Waste Management, Inc.*, 23 Ohio St.3d 100, 102, 491 N.E.2d 1114, 1116 (1986). While an at-will employment situation may be modified by an employee manual or by actions or statements which reasonably induce detrimental reliance by an employee, *see Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 104, 483 N.E.2d 150, 154 (1985), no evidence of any such statements or reliance was presented. Wilson's argument that he relied on a company policy which allowed displaced employees facing the elimination of their positions to "bump" down to a previously held position is unpersuasive. The facts clearly indicate that Wilson was not offered the option of reclaiming his Manager of Chemical Purchasing position because the duties and qualifications for that position had changed in the five years since Wilson had held the post. Wilson admitted as much at his deposition, and in any event there was no evidence before the district court suggesting that Wilson had acted or foregone action in reliance on the bumping policy.

Viewing the evidence in the light most favorable to the non-moving party, the district court properly concluded that no genuine issues of material fact existed to prevent summary judgment in favor of Firestone on the contract claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Therefore, while we affirm the summary judgment because the contract claim was not formally appealed to this court, we agree that even had Wilson properly appealed, we would be obliged to affirm on these facts.

## III.

We remain sensitive to the concerns of older workers subject to layoffs or job transfers necessitated by an employer's need to downsize or streamline operations. Where genuine factual issues are presented raising the possibility of age discrimina-

tion, summary judgment or a directed verdict would be inappropriate. In addressing workplace discrimination based on race, the Supreme Court has stated:

> The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and racially neutral employment and personnel decisions. In the implementation of such decisions, it is abundantly clear that Title VII tolerates no racial discrimination, subtle or otherwise.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973). The same may be said of the ADEA and age discrimination. Yet "[t]he ADEA did not change the fact that an employer may make a subjective judgment to discharge an employee for any reason that is not discriminatory" so long as the discharge is not inconsistent with any contractual obligations or other promises made to the employee. *Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986) (citation omitted). The ADEA only bars discrimination on account of age; it does not place on employers an affirmative obligation to retain older workers whenever a reduction in staff becomes necessary.

As this court has previously held, a plaintiff whose employment position is eliminated in a corporate reorganization or work force reduction carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons. *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir.1986). As long as employers do not act with discriminatory intent, they may eliminate positions in the name of economic necessity or efficiency, even when those positions are held by more senior workers. *See Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1469 (6th Cir.1990) ("This Circuit has clearly established that an employer has no duty under ADEA to permit an employee to transfer to another position or displace workers with less seniority when the employee's position is eliminated as part of a work force reduction"). The ADEA plaintiff in a work force reduction case must present direct, circumstantial, or statistical evidence that age

was a determining factor in his job displacement. *Ridenour*, 791 F.2d at 57. Absent such evidence, Firestone was free to reorganize and eliminate positions in whatever lawful manner it chose.

The judgment of the district court in favor of defendant Firestone is AFFIRMED.