95 F.3d 1152
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Frances JACKSON (No. 95-1539) and John Friday (No. 95-1566),
Plaintiffs-Appellants,
v.
FORD DEALER COMPUTER SERVICES, INC., Defendant-Appellee.
 Nos. 95-1539, 95-1566.
 United States Court of Appeals, Sixth Circuit.
 Aug. 23, 1996.
 
 Before: KENNEDY and BOGGS, Circuit Judges, and RUSSELL, District Judge.*
 PER CURIAM.
 
 
 1
 Because the facts and issues in these two cases were virtually identical, we consolidated them for oral argument on the motion of counsel for defendant. The disposition of both cases is the same. For reasons detailed below, we affirm both district court decisions in this one opinion.
 
 
 2
 * John Friday and Frances Jackson were long-time employees of Ford Motor Company ("Ford"), employed to oversee Ford's computer system that links its nationwide dealerships for inventory-management purposes. This system is known by the acronym "Combat." Friday and Jackson were the "night" and "day" Combat monitors, respectively, and were responsible for ensuring that the system was operating smoothly. In 1991, the system was sold to Universal Computer Consulting Holding, Inc. which incorporated the division as Ford Dealer Computer Services, Inc. ("FDCS"). Plaintiffs were involuntarily transferred to the new company as part of the sale. After Ford sold Combat to FDCS in 1991, Combat immediately began undergoing modernization and reorganization, though all employees were initially retained.
 
 
 3
 Although plaintiff both claim excellent work records, they both lost their jobs when the new owners made significant changes in Combat. Friday and Jackson brought separate but identical lawsuits, claiming age discrimination pursuant to Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), Mich.Comp.Laws Ann. § 37.2202(1), and breach of contract. FDCS removed the suits to federal court and won a summary judgment. Both plaintiffs now appeal only the age discrimination claims.
 
 II
 
 4
 We review de novo a decision to grant summary judgment, applying the same standard of review used by the trial court. Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir.1990). The evidence must be viewed in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).
 
 
 5
 Jackson's and Friday's claims under the Elliot-Larsen Act are subject to the same evidentiary burdens as claims for employment discrimination under the Age Discrimination in Employment Act because the two sets of law are substantially identical. McDonald v. Union Camp Corp., 898 F.2d 1155, 1159 (6th Cir.1990). Under the guidelines established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), a plaintiff alleging age discrimination can establish a prima facie case by demonstrating that: (1) he was a member of the protected class of individuals between the ages of 40 and 70; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a younger person. O'Connor v. Consolidated Coin Caterers Corp., 116 S.Ct. 1307, 1310 (1996).
 
 
 6
 Since Friday was 47 years old and Jackson was 45 years old, both were members of the protected class. Both Friday and Jackson meet the second and third elements. The subjected issue is whether the fourth element, replacement, has been met. Because neither Friday nor Jackson came forward with evidence to disprove their employers explanation that their jobs were eliminated due to technological change, we conclude that it has not.
 
 
 7
 FDCS has consistently pointed to evidence that Friday's and Jackson's positions were eliminated due to increased automation. It points specifically to the deposition of Harold Collins, an employee responsible for the modernization and reorganization of Combat, who explained that gradual changes in software, hardware, and organization made Friday's and Jackson's positions "no longer necessary." Collins's affidavit also avers that age played no part in the decision. This evidence is specific and persuasive concerning the changes made and why the newly automated Combat did not require night and day monitors to achieve its mission.
 
 
 8
 The plaintiffs point to several pieces of evidence in order to try to meet their burden under the fourth element of the prima facie case. Specifically, Friday argues that he was asked to train Mark Lynn, 25, who was fired for cause a few months later. Jackson argues that Michael Sheets, 24, was transferred into her area and that she was told to train him on Combat so that he could replace her. Friday next argues that Sheets was transferred in and trained on Combat. Jackson and Friday further claim FDCS hired three employees in their early twenties who started under the title "Combat Operations Assistant." Plaintiffs claim that FDCS still has several employees whose primary job functions involve Combat. The plaintiffs support this point only when sentence in an affidavit averring that in the course of their new jobs with Ford (both Friday and Jackson were re-hired by Ford Motor Corporation after they left FDCS) they have contact with their replacements and know that they carry out many of plaintiffs' old duties.
 
 
 9
 None of these allegations is sufficient to establish that Friday and Jackson were replaced, especially in light of FDCS's evidence that the positions were eliminated.
 
 
 10
 First, the hiring, training, and firing of Lynn is irrelevant. He could not have replaced either Friday or Jackson because he was fired while they still worked. Second, the training of Sheets does not help establish replacement because Sheets testified at length about the varied different tasks he performs and how his training was not to enable him to do plaintiff's jobs in the same way they were doing them. Sheets apparently handles all the administrative tasks at the office, and deals with new software development, dissemination, and cataloging--tasks the plaintiffs do not claim they ever performed. At most, Sheets's training indicates he had to know the plaintiffs' jobs as a back-up to the new system. A person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other work. Barnes v. GenCorp, Inc., 896 F.2d 1457, 1465 (6th Cir.1990), cert. denied, 498 U.S. 878 (1990). The discussion of Sheets is the plaintiffs' best hope for showing they were replaced, yet they cite to nothing in the record to show that Sheets is in fact doing their old jobs, while the defendant provides strong evidence that (1) their jobs were eliminated due to automation and (2) Sheets has vastly different duties than those of either plaintiff.
 
 
 11
 The record, on the other hand, contains ample evidence that their jobs are no longer being done by humans, because the essential duties were automated. The closest the plaintiffs can come to showing that the jobs continued is a deposition in which an FDCS employee refers to the modernization as ongoing at the point the two were discharged. The training might allow the inference of replacement if there were not other evidence indicating that the jobs are simply not done any more.
 
 
 12
 Plaintiff's third piece of evidence, that FDCS hired young workers under the title of "Combat Operations Assistant" is not even accompanied by citation to anything in the record. The affidavits of FDCS employees tend to show that there were some additional hired, but that these employees performed tasks much different than those of Friday and Jackson. According to FDCS, Friday's and Jackson's tasks are no longer done by employees because Combat does them automatically. The plaintiffs nowhere offer evidence to support any similarity in job responsibilities between themselves and these new hires, and do not come forward to dispute FDCS's contention that the computer can now do their tasks.
 
 
 13
 Finally, the plaintiffs assert that FDCS has people doing their old jobs because, in the new jobs with Ford, the plaintiffs deal with them. They cite Friday's affidavit for support which says "[t]he FDCS employees with whom I communicate perform some of the same job functions that I performed while employed at FDCS." There is no further elaboration, basis, or clarification. Given the clear evidence explaining the elimination of their jobs, the rule enunciated in Barnes that a person is not replaced if another employee is assigned to perform the same duties in addition to other work, and the overall context of the automation/reorganization, this affidavit does not give rise to a genuine issue of material fact; the affidavit can be true and yet not help the plaintiffs meet their burden or contradict the employer's explanation.
 
 
 14
 Nowhere in their arguments do either Friday or Jackson attack this explanation of the underlying changes in the workplace. Instead, both rely on the same set of "facts," strewn haphazardly and without citation through their briefs, to suggest that their jobs were not eliminated, but rather were taken over by younger workers.
 
 III
 
 15
 The plaintiffs complain that the district court held them to a higher standard by finding that a reduction in force took place. Plaintiffs are required to come forth with specific circumstantial or direct evidence proving discrimination when an employer proves a reduction in force. Wilson v. Firestone Tire & Rubber Co., 932 F.2d 510, 517 (6th Cir.1991). The evidence supports the fact that a type of reduction in force did take place--the positions of Friday and Jackson were eliminated by technological improvements. Even so, the district courts granted summary judgment because the plaintiffs simply have not met their burden of proof on replacement.
 
 IV
 
 16
 Because the plaintiffs have provided no evidence that they were replaced and fail to respond adequately to FDCS's explanation that automation eliminated the need for the services they provide, their appeal is not well taken. The plaintiffs' efforts to show replacement all fall far short of the mark because all the evidence in support of their position (training, other people doing Combat-related tasks) is explained by FDCS's need for people to do other tasks related to Combat, not the same tasks as the plaintiffs performed. Most important, the plaintiffs do not contradict the affidavits showing that the tasks they performed are now performed automatically by the system. The decisions of the district courts to grant summary judgment in both Friday's and Jackson's cases are therefore AFFIRMED.
 
 
 
 *
 The Honorable Thomas Russell, United States District Judge for the Western District of Kentucky, sitting by designation