OPINION
{¶ 1} Plaintiff-appellant, Edgar Howard, appeals a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Contech Construction Products, Inc. ("Contech").
 {¶ 2} Contech is a privately held company that manufactures and sells corrugated metal drainage pipe, plastic pipe, and other products used in site development work. It is based in Middletown, Ohio, but has manufacturing and sales offices throughout the United States.
 {¶ 3} In March 1999, Patrick Harlow was hired as Contech's President and CEO. During his interview with the Board of Directors, Harlow was told that the company's financial performance had been sluggish. The Board further indicated that they wanted to improve profitability.
 {¶ 4} Within a few months of starting his new position, Harlow began to explore the possibility of reducing the payroll by instituting a voluntary separation program ("VSP"). However, after further consideration, Harlow decided not to pursue a VSP at that time.
 {¶ 5} In early and mid-2000, Contech's expenses grew and there were signs that the economy was softening. At the August 2000 Board of Directors meeting, Contech's executive management team submitted a preliminary budget for the fiscal year ending June 30, 2001. The Board rejected the budget and instructed Harlow to revise it to improve profitability. Harlow saw the only way of meeting the Board's demands was by significantly reducing Contech's operating expenses.
 {¶ 6} A new budget was presented and approved by the Board in September 2000. Contech's Chief Financial Officer, James Moyle, told Harlow that he believed Contech had little chance of meeting the new budget. Indeed, Contech did not meet the approved budget and Moyle lost his job as a result.
 {¶ 7} After the Board approved the new budget, Harlow and his executive team expedited a series of actions to reduce costs and improve profitability. Harlow directed that cuts be made in sales, manufacturing and at headquarters.
 {¶ 8} Frank Miller, the Vice-President of Sales, was directed by Harlow to cut approximately $2 million of costs from his department without losing any sales. Miller attempted to cut costs by reorganizing the sales force and eliminating approximately 20 positions. The positions were eliminated through a combination of not rehiring for open positions and terminating some existing employees. The majority of the terminated sales employees were under the age of 40.
 {¶ 9} Contech's Vice-President of Manufacturing, Bill McClane, proposed to reduce costs by closing facilities, and consolidating their functions with other plants. He also increased the seasonal, voluntary layoff program at the manufacturing facilities and conducted involuntary layoffs. McClane's efforts were considered insufficient by the Board, and his employment was terminated.
 {¶ 10} Harlow directed the Vice-President of Human Resources, Chuck Fortener, to develop a VSP for headquarters employees with a payroll savings goal of $1 million. Fortener proposed a VSP open to employees who were at least 50 years old and whose age and years of service at Contech totaled at least 70. The eligibility requirements opened up the VSP to approximately half of Contech's employees at headquarters. Some individuals were excluded from eligibility, including Contech's executive management and three other employees whom they felt would be difficult to replace.
 {¶ 11} If electing to participate in the VSP, the employees would receive a lump sum payment reflecting the length of their service at Contech. Contech would also pay their COBRA premiums for a period of time proportionate with their length of service. Finally, the employee could elect to use outplacement services or receive an additional $500 payment. The VSP was unveiled in October 2000 with an ending date of December 4, 2000. Only six employees elected to participate.
 {¶ 12} Fortener did not believe that Contech would achieve its $1 million cost cutting goal solely through the VSP. Therefore, in November 2000, before the election ended, Fortener directed managers and supervisors to identify the tasks performed in their department and assess their relative importance. The managers and supervisors were to determine which jobs could be absorbed by other employees or eliminated all together. Ultimately, in January 2001, Contech decided to eliminate six positions through an involuntary separation program ("ISP"). One of the employees, Justin Holweger, who was 54 at the time, was transferred to an open position in the credit department. The other five employees, including appellant, were terminated. All five employees were over the age of 50.
 {¶ 13} Appellant filed an age and race discrimination claim against Contech, arguing that his termination violated R.C. Chapter 4112. He also argued that his termination was against Ohio public policy.[1] Contech moved for summary judgment as to all of appellant's claims. The trial court granted Contech's motion. Appellant appeals the trial court's decision raising three assignments of error.
 {¶ 14} Assignment of Error No. 1:
 {¶ 15} "The trial court erred in granting summary judgment as to Count II — age discrimination."
 {¶ 16} Appellant maintains that the trial court erred in not finding that Contech violated the R.C. Chapter 4112 prohibition against age discrimination when it determined to terminate his position. He maintains that the trial court did not properly consider the evidence. He also argues that genuine issues of material fact exist as to his claim.
 {¶ 17} An appellate court's review of a summary judgment decision is de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336. Under a Civ.R. 56(C) motion for summary judgment, the movant must demonstrate that: "(1) [there is] no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Civ.R. 56(C); WelcoIndustries, Inc., v. Applied Cos., 67 Ohio St.3d 344, 346,1993-Ohio-191.
 {¶ 18} The nonmoving party may not rest upon the allegations or denials in the pleadings, but must affirmatively demonstrate the existence of a genuine issue of material fact to prevent the granting of a motion for summary judgment. Civ.R. 56(C); Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115. In deciding whether there is a genuine issue of material fact, the evidence must be construed in the nonmoving party's favor. Angel v. The Kroger Co., Warren App. No. CA2001-07-073, 2002-Ohio-1607.
 {¶ 19} R.C. 4112.02(A) provides in pertinent part, "It shall be an unlawful discriminatory practice for any employer, because of the race, * * * age * * * of any person, to discharge without just cause, to refuse to hire, or otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." A party may bring an action pursuant to R.C. 4112.02(A) by presenting direct, circumstantial or statistical evidence of discrimination. Kohmescher v.Kroger Co. (1991), 61 Ohio St.3d 501, 505.
 {¶ 20} Absent direct evidence, a prima facie case may be established by an employee demonstrating that (1) he was a member of the protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by, or his discharge permitted the retention of, a person who did not belong to the protected class. McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792,802, 93 S.Ct. 1817; Kohmescher at 505-506. A prima facie case raises an inference of discrimination only because we presume the acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. Mauzy v. Kelly Services, Inc.,75 Ohio St.3d 578, 584, 1996-Ohio-265.
 {¶ 21} Upon presentation of a prima facie case, the employer may submit a "legitimate, nondiscriminatory reason" as to why the employee was discharged. Kohmescher at 503. The employee is then permitted to show that the reasons for the employer's adverse action were merely a pretext for unlawful discrimination. Id. at 503-503. If the employee is unable to establish a prima facie case of age discrimination or to present evidence that the employer's asserted reasons for the adverse action are false, the employee's age discrimination case will fail. Stair v. PhoenixPresentations, Inc. (1996), 116 Ohio App.3d 500, 509, citing to Barkerv. Scovill, Inc. (1983), 6 Ohio St.3d 146, 148.
 {¶ 22} Neither party disputes that appellant has established the first three elements of a prima facie case necessary to support an age discrimination claim. Appellant alleges that he has presented evidence to satisfy the fourth element as well. In his brief, he presents many items as evidence to support his contention that he has met his burden in showing a prima facie case of discriminatory intent.
 {¶ 23} In support of his prima facie case, appellant first points to the VSP as evidence that Contech intended to terminate its aged 50 and older employees because only those over the age of 50 could take advantage of it. However, Contech placed both an age and a years-of-service requirement on its VSP eligibility. Only employees with at least 20 years of service and at least the age of 50 were eligible to participate. A voluntary separation plan that uses both of these factors does not indicate a policy of age discrimination. See Wilson v. FirestoneTire and Rubber Co. (C.A. 6, 1991), 932 F.2d 510, 514.
 {¶ 24} Appellant next argues that Harlow, from the inception of his employment as Contech's CEO, intended to eliminate those over age 50. Appellant points to the fact that Harlow testified that he looked into offering a VSP during his first year as CEO similar to what he later offered. Again, a VSP that utilizes age with other factors does not show discriminatory intent. Id.
 {¶ 25} Appellant also points to the fact that Harlow used a document that listed the employees' ages when determining who to offer the VSP to. He maintains that because it was used in the creation of the VSP, it shows that Harlow used the listed ages for the ISP as well. Appellant's mere assertion offers no proof that Harlow discriminated against appellant on account of his age. Id.
 {¶ 26} Appellant maintains that only those who were eligible for the VSP were considered for the ISP. He points to the testimony of Kristen Shepard, Supervisor of Employee Benefits. He also points to the testimony of Robert Hall, Manager of the IT department, who stated that it did not surprise him that an employee who was eligible for the VSP was terminated pursuant to the implementation of the ISP. Also, David Senften, Manager of Transportation and Distribution, stated when asked that he believed that the ISP and VSP were related.
 {¶ 27} However, Shepard, Hall and Senften admitted in their depositions that they were not involved in the decision making process concerning which positions to eliminate. Stray remarks do not substantiate a finding of discrimination when they "cannot be linked to the decisionmaker bringing forth the adverse action." Samadder v. DMF ofOhio, Inc., 154 Ohio App.3d 770, 2003-Ohio-5340, ¶ 47.
 {¶ 28} He also asserts that "Contech took active steps to push the employees to accept the VSP." He argues that he was threatened that "if an insufficient number of employees elect to resign under the VSP, involuntary separations would be necessary and any later package would not be as `generous.'" He also maintains that during a meeting with Fortenor he was encouraged to accept the VSP.
 {¶ 29} In the initial letter the employees received concerning the VSP, the above language was included. However, the letter also stated that, "We wish to stress that your termination of employment under the Program must be strictly voluntary. If anyone tells you that you must participate in the Program because you are going to be terminated, they are misinforming you. Please report any such communication * * *." Further, appellant testified in his deposition that he understood the VSP to be "more or less, you had the option to take it or not to take it." The evidence presented by appellant has little to no weight in showing that Contech acted with a discriminatory animus in selecting his position for termination.
 {¶ 30} Appellant also provided the trial court a statistical analysis report completed by Sharon Kelly that was prepared for Contech.[2] Kelly's report found that the difference between the actual and predicted number of terminations of the aged 50 and older employees could have occurred by chance. Appellant notes in a footnote that Kelly's analysis is flawed because it utilizes the wrong number of employees. Appellant argues that only those employees who were considered for the ISP and those who did not take advantage of the VSP should be counted. He then provided a printout from a web site, which purportedly computed the same statistical calculation as Kelly, only concluding that the number of those terminated was statistically significant and probably did not occur by chance.
 {¶ 31} However, in order for statistics to be valid and helpful in a discrimination case, both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination. Goad v. Sterling Commerce, Inc. (June 13, 2000), Franklin App. No. 99AP-321, citing to Stair, 116 Ohio App.3d at 510. Here, as the trial court found, the statistics represent only one factor, the age of the employees. They do not account for the skills of those employees or the business needs of the company. As such, they offer little to no support on their own as to an inference of age discrimination.
 {¶ 32} Appellant argues that Holweger, Ruscher and Kiefer were permitted to transfer to open positions within Contech, but he was not offered the option. Holweger, one of the employees who lost his position, is also over the age of 50. He was selected to transfer because of his skills. Ruscher was not hired until several months after the end of the ISP, and Kiefer had a business degree. Again, appellant's assertion offers little to no support as to an inference of age discrimination.
 {¶ 33} Finally, appellant maintains that Taylor, Grant and Voegele, whom appellant worked with in the cost accounting department were similarly situated to him and permitted to remain in the department. Although younger than appellant, at 35, 43 and 48 years of age respectively, Taylor, Grant and Voegele did not have the same job classification as appellant. Further, Jeannie Stine, who did have the same job classification as appellant, was in his department, and was also over the age of 50, was not terminated. As such, appellant's discharge did not permit "the retention of a person who did not belong to the protected class." Kohmescher, 61 Ohio St.3d at 505-506.
 {¶ 34} Considering the evidence presented by appellant, we find that appellant did not meet the burden of establishing a prima facie case. Even assuming that appellant had established a prima facie case, appellant did not adequately rebut Contech's non-discriminatory reason as being a pretext to his release.
 {¶ 35} Assuming appellant proved his prima facie burden allowing a presumption of discriminatory intent, the burden would shift to Contech to give a legitimate nondiscriminatory reason for terminating appellant's position. Contech maintains that the cost accounting department, where appellant worked, was reorganized due to a reduction in force. According to Harlow, the reduction in force was necessitated by a soft economy and a desire to improve the profitability of the company. Headquarters, where appellant worked, was ordered to lower its costs by $1 million.
 {¶ 36} "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the [employee's] duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." Barnes v. GenCorp Inc.
(C.A. 6, 1990), 896 F.2d 1457, 1465.
 {¶ 37} In Contech's reduction in force, Wilson was directed to reorganize the cost accounting department and eliminate two positions. After the reorganization, the amount of work that each person in the department was responsible for was going to increase, therefore each employee's productivity in the department was a consideration. According to his managers' deposition testimony, appellant was the least productive in the department. Two positions were terminated, one of which was appellant's. The work was absorbed amongst those remaining in the department. No single person now completes all of appellant's work.
 {¶ 38} Appellant's department was not the only one that had terminations and was reorganized. Within headquarters, five individuals lost their positions due to reorganization. The evidence presented shows that Contech terminated some of its contractors. The record also indicates that Contech implemented a hiring freeze in that any request to hire or replace an employee had to have approval of the vice-president of the department and Harlow or Fortener. Further, the record indicates that two vice-presidents were terminated for not meeting expectations with the cost reductions.
 {¶ 39} Some of the plants were closed and reorganized to improve distribution and positions were terminated. Further, according to the evidence, the sales force cut costs and lost approximately 20 positions due to the reorganization of its area. A majority of those individuals terminated from sales were not within the protected age class.
 {¶ 40} In arguing that Contech's reason for eliminating appellant's position is pretext, appellant points to the fact that Contech was still profitable. A company does not have to be unprofitable in order to institute a reduction in force. See Lehere v. Gould Defense Systems,Ocean Systems Div. (June 11, 1987), Cuyahoga App. No. 52294. He also argues that employees were still hired. As stated above, employees were hired on an as needed basis with prior approval necessary. He also maintains that severance packages were given to some individuals who were terminated. However, as Moyle testified, these severance costs were not calculated in the net income of the corporation.
 {¶ 41} After a thorough examination of the record, we agree with the trial court's assessment that appellant lost his position as a result of Contech's nondiscriminatory reason of a reduction in force. Appellant has not presented evidence showing that the reduction in force was pretext. As such, we find no error in the trial court's decision granting summary judgment in favor of Contech. Moreover, no genuine issue of material fact exists. Accordingly, appellant's first assignment of error is overruled.
 {¶ 42} Assignment of Error No. 2:
 {¶ 43} "The Trial Court erred in granting summary judgment as to Counts IV and V — Race Discrimination."
 {¶ 44} The same analysis used in determining age discrimination claims is also utilized in race discrimination claims. Plumbers Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.
(1981), 66 Ohio St.2d 192, 197. Therefore, the same elements of a prima facie case for race discrimination claim and the burden shifting analysis which were discussed in the previous section apply here as well.
 {¶ 45} Appellant testified in his deposition that he was not treated the same as non-minority employees. He argues that children of non-minority employees, but not those of minority employees, were hired over the summer. He also argues that similarly situated co-workers made more money than he did for the same job. He alleges that two nonminority employees routinely were given raises, but he was not. He also argues that he was not permitted to come in on the weekends to catch up on work, unlike others.
 {¶ 46} Appellant's contentions are without merit. Appellant was the only minority whose position was terminated through the ISP. His children were hired to work for Contech over the summer. Only one other employee in the cost accounting department was of the same job classification as appellant, Stine. Stine made $300 more a year than appellant, however Stine had more responsibilities than appellant. Appellant presented no evidence that two other nonminorities routinely received raises. Finally, appellant's supervisor testified that appellant did not finish his work in a timely manner during the work week, and therefore he was not permitted to work overtime on the weekends to complete his tasks.
 {¶ 47} However, the fourth element in the prima facie analysis states that a prima facie case can be shown if the adverse action allowed the retention of an employee who is not a member of the protected class.Kohmescher, 61 Ohio St.3d at 505-506. Howard was the only minority employee in his department. Because his position was terminated, he was treated worse than non-protected similarly situated employees. Therefore, he has established a prima facie case of discrimination.
 {¶ 48} Nevertheless, Contech is still entitled to summary judgment because it had a legitimate nondiscriminatory reason for its actions, i.e., the reduction in force. See Barnes, 896 F.2d at 1465. As stated above, appellant has not sufficiently rebutted the nondiscriminatory reason as pretext for discriminatory intent. Accordingly, appellant cannot establish that the termination was a result of discriminatory intent. Appellant has presented no genuine issue of material fact. As such, his second assignment of error is overruled.
 {¶ 49} Assignment of Error No. 3:
 {¶ 50} "The Trial Court erred in granting summary judgment as to Count VI — Wrongful Discharge in Violation of Public Policy."
 {¶ 51} Appellant maintains that his discharge was in violation of Ohio public policy. See Kulch v. Structural Fibers, Inc.,78 Ohio St.3d 134, 1997-Ohio-219. A public policy claim will fail if the underlying discrimination claim fails. Godfredson v. Hess Clark,Inc. (C.A. 6, 1999), 173 F.3d 365, 375; Robinson v. Nationwide Ins.Companies (Dec. 21, 2001), Lake App. No. 2000-L-119. We have found that both appellant's race and age discrimination claims have failed. As such, appellant's public policy claim likewise fails. Appellant's third assignment of error is overruled.
 {¶ 52} Judgment affirmed.
YOUNG, P.J., and WALSH, J., Concur.
[1] Appellant originally also filed a worker's compensation retaliation claim and disability discrimination claim. However, appellant did not oppose Contech's motion for summary judgment as to these claims.
[2] Contech withdrew her report prior to the summary judgment proceeding. However, appellant submitted her report in the summary judgment proceeding.