[Cite as *Simonelli v. Fligner*, 2012-Ohio-6112.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| MICHAEL SIMONELLI | C.A. No. 11CA010098 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KELMAN FLIGNER, et al. | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellees | CASE No. 10CV169586 |

DECISION AND JOURNAL ENTRY

Dated: December 26, 2012

MOORE, Presiding Judge.

{¶1} Plaintiff, Michael Simonelli, appeals from the judgment of the Lorain County Court of Common Pleas, which granted summary judgment to Fligner Enterprises, Fligner's Market, and Kelman Fligner (collectively "Fligners") and dismissed Mr. Simonelli's complaint. This Court affirms.

I.

{¶2} In 2009, Mr. Simonelli was working as a butcher at Fligner's Market. During the course of his employment, a meat-cutting band saw amputated the tip of Mr. Simonelli's thumb. Thereafter, Mr. Simonelli filed a complaint against Fligners. In the complaint, Mr. Simonelli did not specifically delineate the causes of action on which his complaint was based, but broadly speaking, his allegations included that he was wrongfully terminated, that Fligners intentionally caused his injury, and that he suffered financial and emotional damages due to Fligners' conduct.

{¶3} Fligners filed a motion for summary judgment, arguing that no genuine issue of material fact existed in regard to Mr. Simonelli's claims and that they were entitled to judgment as a matter of law. Mr. Simonelli filed a response in opposition to the motion. The trial court issued a judgment entry granting Fligners' motion, and thereafter issued a journal entry dismissing all of Mr. Simonelli's claims. Mr. Simonelli has appealed from the trial court's rulings, and he presents one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF [FLIGNERS].

{¶4} In his sole assignment of error, Mr. Simonelli argues that the trial court erred in granting summary judgment to Fligners. We disagree.

{¶5} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶6} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). The moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Dresher* at 292-93. Once this burden is satisfied, the non-moving party

bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to, or provide, some evidentiary material that demonstrates a genuine dispute over a material fact. *In re Fike Trust*, 9th Dist. No. 06CA0018, 2006-Ohio-6332, ¶ 10.

**{¶7}** Here, the trial court granted Fligners summary judgment on all of Mr. Simonelli's claims. We will separately discuss the propriety of summary judgment on each of the claims identified by Mr. Simonelli in his merit brief.

Intentional Tort

**{¶8}** Mr. Simonelli first argues that the trial court erred in granting summary judgment in favor of Fligners on his claim for an employer intentional tort. "Under Ohio law, employees injured in the workplace are generally limited to the remedy provided by the Workers' Compensation Act." *Barton v. G.E. Baker Constr., Inc.*, 9th Dist. No. 10CA009929, 2011-Ohio-5704, ¶ 7, citing R.C. 4123.74; *see also Houdek v. ThyssenKrupp Materials N.A., Inc.*, Slip Opinion No. 2012-Ohio-5685, ¶ 25. However, in limited situations, an injured employee may bring a claim against his employer for an employer intentional tort pursuant to the provisions of R.C. 2745.01. *Barton* at ¶ 7; *see also Houdek* at ¶ 14.

**{¶9}** R.C. 2745.01 provides in relevant part:

(A) In an action brought against an employer by an employee * * * for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

Further, R.C. 2745.01 "permit[s] recovery for employer intentional torts only when an employer acts with *specific intent* to cause an injury * * *." *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, ¶ 56; *Houdek* at ¶ 3.

{¶10} In his complaint, Mr. Simonelli alleged that his injury was caused due to the "unreasonably unsafe" conditions at the market. In their motion for summary judgment, Fligners argued that Mr. Simonelli pointed to no evidence that Fligners acted with the deliberate intent of causing injury. In support, Fligners pointed to Mr. Simonelli's deposition, wherein he maintained that Fligners had not provided safety training to him. However, Fligners argued that the lack of safety training did not establish a deliberate intent to cause injury to Mr. Simonelli for purposes of an employer intentional tort claim. Further, Mr. Simonelli acknowledged in his deposition that he had twenty-two years of experience as a meat cutter before coming to Fligners, that he had used the same model band saw at his previous positions, and that he did not need training on how to safely use the saw. Further, Mr. Simonelli stated that he did not believe that Fligners intended to cause him injury.

{¶11} Based upon this evidence, Fligners met their initial *Dresher* burden of pointing to some evidence of the type listed in Civ.R. 56(C) that Mr. Simonelli lacked proof that Fligners acted with a specific intent of causing him injury. *See Dresher* at 292-93. Therefore, the burden shifted to Mr. Simonelli to point to, or provide, some evidentiary material that established that a question of material fact remained as to his claim for an employer intentional tort.

{¶12} In his response, Mr. Simonelli pointed to the deposition of Robert Kritz, general manager of Fligner's Market. During Mr. Kritz' deposition, he averred that no training or safety instructions were provided to Mr. Simonelli, that he did not provide a handbook which contained certain safety rules to Mr. Simonelli, and that employees are permitted to carry on conversations

while cutting meat. Mr. Simonelli also pointed to his own deposition, wherein he averred that Fligners had placed cardboard over the concrete floor in the cutting room. At the time of his injury, he was distracted by the cardboard because he was concerned that he would lose his footing on the cardboard, which had become wet. Further, Mr. Simonelli attested that Kelman Fligner, the owner of the market, told him not to cut like "an old lady," which Mr. Simonelli interpreted as meaning his employer considered job speed to be more important than his safety.

{¶13} However, Mr. Simonelli did not point to any evidence from which we could reasonably infer that any of the actions he complained of were designed to specifically cause him injury. Thus, even when viewed in the light most favorable to Mr. Simonelli, "although the evidence shows that [Fligners] may have placed [him] in a potentially dangerous situation, it does not demonstrate that [Fligners] deliberately intended to injure him." *See Houdek* at ¶ 26.

{¶14} Therefore, Mr. Simonelli failed to meet his reciprocal burden of establishing that a genuine issue of fact remained as to his claim for an employer intentional tort, and the trial court appropriately granted summary judgment to Fligners on this claim.

Intentional Infliction of Emotional Distress

{¶15} Mr. Simonelli further argues that the trial court erred in granting summary judgment in favor of Fligners on his claim for intentional infliction of emotional distress.

{¶16} In their motion for summary judgment on this claim, Fligners did not argue that Mr. Simonelli was prevented by the provisions of the Workers' Compensation Act or by R.C. 2745.01 from maintaining a common law action for intentional infliction of emotional distress against Fligners. *See* R.C. 2745.01(D) (section not applicable to claims of intentional infliction of emotional distress not compensable under R.C. 4121 and 4123). However, Fligners

contended that no issue of material fact existed on the issue of the infliction of serious emotional distress.

{¶17} "One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Yeager v Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*, 6 Ohio St.3d 369 (1983), syllabus. "The emotional distress suffered must be both severe and debilitating to recover damages under an intentional infliction of emotional distress claim." *Brooks v. Lady Foot Locker*, 9th Dist. No. 22297, 2005-Ohio-2394, ¶ 32, citing *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983).

{¶18} In support of their argument that Mr. Simonelli lacked evidence of serious emotional distress, Fligners pointed to Mr. Simonelli's deposition. During his deposition, Mr. Simonelli was asked, "Have you suffered any emotional damages, difficulty sleeping, anything like that?" Mr. Simonelli responded, "No." Based upon this, we conclude that Fligners met their initial *Dresher* burden of pointing to some evidence demonstrating that Mr. Simonelli lacked evidence to support his claim.

{¶19} In his response to Fligners' motion, Mr. Simonelli argued only that emotional distress would be the subject of a future expert evaluation. However, Mr. Simonelli pointed to no evidence demonstrating that a question of material fact existed on this element of his claim. Therefore, Mr. Simonelli failed to meet his reciprocal *Dresher* burden. Accordingly, the trial court did not err in granting summary judgment to Fligners on this claim.

Negligent Infliction of Emotional Distress

{¶20} Mr. Simonelli also argues that the trial court erred in granting summary judgment to Fligners on his claim for negligent infliction of emotional distress. Fligners respond that his complaint did not set forth a cognizable claim for negligent infliction of emotional distress.

{¶21} R.C. 4123.74 provides that employers who utilize the workers' compensation fund "shall not be liable to respond in damages at common law or by statute for any injury * * * received or contracted by any employee in the course of or arising out of his employment * * *." This section defines "injury" to include "any injury * * * received in the course of, and arising out of, the injured employee's employment," but it does not include "psychiatric conditions except where the conditions have arisen from an injury or occupational disease." R.C. 4123.01(C)(1).

{¶22} Therefore, at issue here is whether Mr. Simonelli alleged that his emotional injuries were related to the physical injury that he sustained in the course of and arising from his employment. *See* R.C. 4123.01(C)(1). In his complaint, Mr. Simonelli alleged that Fligners' conduct caused the "amputation of a portion of his thumb, which caused significant physical injuries, emotional injuries, and economic damages." Therefore, Mr. Simonelli alleged that his emotional injuries were the direct consequences of the physical injury that he sustained through his employment. However, he failed to set forth a legally cognizable claim of negligent infliction of emotional distress, as his exclusive remedy for negligently inflicted emotional injuries resulting from his physical injury lay within the provisions of the Workers' Compensation Act. *See Harrison v. Franklin Co. Sheriff's Dept.*, 10th Dist. No. 00AP-240, 2000 WL 1808303, *5 (summary judgment in favor of employer appropriate on employee's claim for negligent infliction of emotional distress where employee's alleged psychological

damages were directly connected to physical injuries sustained during the course of employment.) Therefore, Mr. Simonelli's argument that the trial court erred in granting summary judgment in favor of Fligners' on this purported claim is without merit.

Wrongful Discharge

{¶23} Mr. Simonelli further argues that the trial court erred in granting summary judgment to Fligners on his claim for wrongful discharge. In order to establish a wrongful discharge, the following elements must be present:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
>
> 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

(Emphasis sic.) *Painter v. Graley*, 70 Ohio St.3d 377, 384 (1994), fn. 8.

{¶24} As a threshold matter, Mr. Simonelli has conceded that he was not discharged from his employment. However, he argues that a question of material fact exists as to whether he was constructively discharged.

{¶25} In their motion for summary judgment, Fligners argued that Mr. Simonelli was not constructively discharged from his position. In support, Fligners pointed to Mr. Simonelli's deposition. Therein, Mr. Simonelli maintained that he did not return to work because: (1) Mr. Fligner was upset with him for not working "light duty," (2) Mr. Fligner had withheld his paycheck, (3) Mr. Fligner yelled at his sister when she called to inquire about the paycheck, (4) Mr. Fligner would not release the paycheck to Mr. Simonelli's attorney, and (5) Mr. Simonelli's

supervisor had informed him that Mr. Fligner was looking for any reason to terminate him. Fligners argued that none of these factors, even if they are properly considered, viewed in the aggregate, and construed in the light most favorable to Mr. Simonelli, amounted to a constructive discharge as a matter of law. We agree.

{¶26} "To prove constructive discharge, an employee must show that 'the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign.'" *Giannini-Baur v. Schwab Retirement Plan Servs.*, 9th Dist. No. 25172, 2010-Ohio-6453, ¶ 21, quoting *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578 (1996), paragraph four of the syllabus. "An employee's belief that he was compelled to resign must be judged 'without consideration of his undue sensitivities.'" *Risch v. Friendly's Ice Cream Corp.*, 136 Ohio App.3d 109, 113 (1st Dist.1999), quoting *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th Cir.1991).

{¶27} In his response to the motion for summary judgment, Mr. Simonelli did not provide any additional evidence as to the purported intolerability of his working conditions. Instead, he maintained that his deposition testimony, set forth above, demonstrated that a genuine question of fact remained on this issue. However, we cannot say that any of Mr. Simonelli's averments, even when viewed in the light most favorable to him, would cause a reasonable person to feel compelled to resign. *See Giannini-Baur* at ¶ 21; *see also Risch* at 113 (supervisor's "arguably boorish and offensive" statements and "general attitude of surliness or anger" insufficient to survive summary judgment on issue of intolerable working conditions). Upon review of the record, we cannot discern of any allegations made by Mr. Simonelli as to Fligners' conduct that would rise to the level of making working conditions so intolerable that a reasonable person would have felt compelled to resign.

**{¶28}** Therefore, because Mr. Simonelli failed to meet his reciprocal burden of producing facts sufficient to demonstrate that a question of fact existed as to his constructive discharge from employment, the trial court properly granted summary judgment on the wrongful discharge claim in favor of Fligners.

Hostile Work Environment

**{¶29}** Mr. Simonelli further argues that the trial court erred in granting summary judgment to Fligners on his claim for a hostile work environment. We disagree.

**{¶30}** Hostile work environment claims arise from Title VII of the United States Code. Title VII prohibits employers from discriminating against an individual "with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin." *Jarvis v. Gerstenslager*, 9th Dist. No. 02CA0047, 02CA0048, 2003-Ohio-3165, ¶ 29, quoting *Faragher v. BocaRaton*, 524 U.S. 775, 786 (1998). "To establish a claim for hostile work environment, an employee must demonstrate: (1) he or she is a member of a protected class; (2) he or she was subjected to unwelcome harassment; (3) the harassment was based upon membership in the protected class; (4) the harassment created a hostile work environment; and (5) the existence of employer liability." *Jarvis* at ¶ 29, citing *Hafford v. Seidner* 183 F.3d 506, 512 (6th Cir.1999), and *Williams v. General Motors Corp.*, 187 F.3d 553, 560-561 (6th Cir.1989).

**{¶31}** After a review of Mr. Simonelli's complaint, the only reference to such as claim was that Fligners created a "hostile work environment." We can locate no allegation that he is a member of a protected class or that he was subjected to a hostile work environment based upon his membership in a protected class. *See Jarvis* at ¶ 29. Additionally, Mr. Simonelli has developed no argument in the trial court or on appeal as to this purported claim, and we decline

to do so on his behalf. Accordingly, we conclude that Mr. Simonelli's complaint does not set forth a Title VII hostile work environment claim, and, thus his argument that the trial court improperly granted summary judgment to Fligners on this purported claim is without merit.

III.

**{¶32}** Mr. Simonelli's sole assignment of error is overruled, and the judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

CARR, J.
DICKINSON, J.
CONCUR.


APPEARANCES:

THOMAS P. MANNION, BRANDAN M. RICHARD and KATHLEEN M. KIRBY, Attorneys at Law, for Appellant.

JULIE L. JUERGENS and COLLEEN R. DELBASO, Attorneys at Law, for Appellees.